3105 Bazan v. Army 3135 Mr. Bazan, please proceed. Good morning, Your Honor. May it please the Court, I am John Bazan, Petitioner pro se and attorney member of this Court. Petitioner in this appeal was a Veterans Preference Eligible Candidate who applied for an open position of Deputy District Counsel in charge of contract claim and general litigation with the agency. The position was announced as Deputy District Counsel in charge of contract claim and litigation and this is at the record at A051. The parties prior to the hearing stipulated to this and that's at the record at A031. Even if we agree that there was a misapplication of the preference eligibility standards, the most we could do would be to remand, correct? No, Your Honor. I believe that the Court could rule that the petitioner was better qualified. But wasn't there a second candidate that was also a preference eligible veteran? No, Your Honor. Mr. Large was not preference eligible and that was part of his testimony before the administrative judge. That was also part of the argument that I made as well that the selecting official didn't follow the procedures of determining who was a veterans eligible veteran and in doing and not doing that, he made the error of considering Mr. Large veterans preference eligible. But Mr. Large's testimony was that he is not and he was not. But there would still have to be an opportunity for a comparison between your qualifications and Mr. Large's qualifications even if we were to agree that yours were better than the chosen candidate. Well, Your Honor, I think in the record I believe the qualifications approval memorandum and it's quite possible that because of redactions to the record and rulings of the administrative judge that the record's not developed enough to determine Mr. Large. But he did testify and I believe based on his testimony, his testimony was that he was not as qualified as the petitioner. So I believe that in the record there is the evidence available. Where is that in the record that he says he's not as qualified? Well, it would be in his testimony, Your Honor. Where in the record? Exactly. Yes, please. That's why I'm asking. Your Honor, I don't have that tabbed. I couldn't get to that for you. I don't remember seeing that in his testimony. That's why I'm concerned about this because that's an important concession. Well, I didn't tab it. And to the extent, I believe that in his testimony he indicates my qualifications and I believe that he also indicates that he was not a type 3 litigation attorney as the Army Corps of Engineers indicates. And perhaps that's what I'm referring to. But again, Your Honor, I did not tab that. Well, they take into account, I mean, do you disagree that they take into account your status as a veteran? I mean, they say they're aware that you're a lieutenant colonel in the reserve and they say that they know your supervisory responsibilities as an LTC. So there's evidence that they're taking into account. Actually, and I did tab this, the agency indicated that I was not entitled to veteran's preference. And the selecting official, if I may, if you look at, it's A149 starting at... I'm looking at 150 right now. Your Honor, you can see that there's discussion of the type TP. That's a CPAC. That's our human resources. That's a CPAC reference. And what he's indicating is he didn't follow any of the procedures, which I would also argue it goes to under Patterson v. Department of Interior, he was not following as far as administratively feasible the requirements of determining who was veteran's preference eligible. That was also a violation of DOD I-1442. So that's one of the reasons why he made the mistake of believing Mr. Large was veteran's preference eligible. He didn't know and nor did he take any time to do what the regulations required in determining. So the answer to the courts, yes, I am alleging that he did not consider my veteran's preference eligible status because he did not follow the procedures. And of course, the agency takes the position that I wasn't even eligible. So I don't believe in real time during the review of these applications, and also I think you can see from my testimony, I state I was told by the selecting official I did not consider your veteran's preference. So yes, I am alleging that it was not considered. But we can't review that factual determination, and on page 149 of the record, which you just pointed to, the deciding official said, and his service overseas was a positive factor also. He says, whether it's true or not, that he considered your veteran's status to be a positive factor in the selection process. Another argument that I make, and the board, I believe this was an error, they come up with this generally positive factor, and then they allowed testimony that these various things. That he considered my service overseas, but he didn't follow the requirements of the Department of Defense in DODI 1442. He didn't do the things that were required. What specifically didn't he do that you think he needed to do? The DOD initiative that you just spoke of, what is it that he didn't do? Well, what he didn't do is he didn't establish who was veteran's preference eligible at any particular stage. And so that was a violation of DOD 1442. Also, DOD 1442, and it's in my papers, but required that he hire the best qualified, and if all things being equal, if it was a veteran's preference eligible, it should have been a veteran's preference eligible individual. Also, an argument that I'm making... But the argument they make is all things are not equal. Well, your honor, all things are not equal because the board would not look at the violations of the selecting official's duties under the prohibited personal practices under what I believe it's 5 USC... Yeah, that's actually an important question because even if we, again, believe that he didn't properly weigh preference eligibility because he simply said, well, we noted that he had it on his resume, so that was generally positive. If that's not enough, what do we do about the fact that the preferred background for this position included substantial knowledge of environmental laws? Well, your honor, that's a great point because it doesn't. And that's testimony of Mr. Large, what the position was, because the administrative judge did not allow me to look at the job descriptions of the outgoing deputy. And so I think if you look at the approval qualifications memorandum, and you'll see the seven factors for the position. And also, as I mentioned in the start, I believe I got that far, this was deputy district counsel in charge of claims and litigation, which has no general civil litigation requirement. I'd also point to the board to a chart at A260, which indicates that our district was not a civil works district, as the government states. I guess I don't even understand the nature of this particular argument, because we're not in the business of reviewing the posting and deciding whether the government has accurately reflected what it needs in the position. I mean, that would be a very strange thing for an appellate court to start getting into the business of doing. The government decides what the qualifications are that it needs for a person in a given position, and they post those qualifications. And at most, what subsequent judicial forums can do is make certain that they followed veterans' preferences in doing it. Which may mean, you might be right and the government might be wrong, that if it's close and you're in second place and all things were equal, you should have been the one to get the job, not them. And maybe there is some avenue for requiring judicial officials to review whether or not it was, in fact, a tie, and you should have gotten the nod and looked into the qualifications. But I didn't understand your objections, your request for discovery, your objections, and your appeal of those issues to the extent that what you were asking for was Miss Moriarty's job descriptions from her prior jobs and things like that. I don't see what relevance that has to whether she is appropriate for the current position. Your Honor, I guess first I believe it's appropriate for an appellate court to review de novo errors by the board that are questions of law. And I believe that the statutes that I have cited to you in my papers indicate why I'm asking the court to look at these facts. So I believe that answers the question. But your very sentence was confusing. The sentence you just uttered, the court has to review questions of law. I believe it's clear from my paper why I'm asking you to look at these facts. Do you see the problem? We don't look at facts. No, Your Honor. We look at side questions of law. And so what is the question of law? You may have some traction with me on your larger point, which is that they should have reviewed the individual qualifications and that maybe the board below was incorrect to the extent that it repeatedly said, we don't review the qualifications and assess whether two candidates are equally entitled or qualified for the job. I mean, that's a legal point, it seems to me, because it's interpreting the DOD directive that says when there are two people equally qualified, you've got to give the job to a veteran. And so that's a legal point. But the question about the nature of what she did in her prior work or what her prior job descriptions were, and those are the things about which you're asking for discovery. I don't see how those relate to the legal question. Yes, Your Honor. And in that case, then, I would have to concede that those would be something that would be not reviewed de novo and there would be abusive discussion review. And I believe that if the approval qualification memorandum was looked at, it should indicate that the petition was better qualified. I'm well past or well into my rebuttal. But one other question I have for you is one of the other things you sought in discovery was you actually wanted Ms. Moriarty's performance evaluations. And so what I'm trying to wrap my head around is if you are right on the legal point that you had a right to have a judicial body or MSPB board review your qualifications. Suppose you were second place. So we take out Mr. Burke entirely. So there's no question. Suppose you were the second place candidate and the MSPB should have looked at Mrs. Moriarty's qualifications and your qualifications and decided whether or not you were equally qualified, in which case you should have gotten the position over her. If that's a legal standard that we were to endorse, I'm a little nervous about how far that opens the door to discovery because, you know, you understand you're very well qualified and well spoken and all of that. But a lot of times we get these appeals from many, many different people. I don't think that we should open up the doors of discovery and let them see all of their competitors' job evaluations, job performance, performance reviews. I mean, you know, the confidentiality has to be really important in those scenarios. It would be a strange door to open to give you access to all of Mrs. Moriarty's personal employment reviews and all of the jobs she's had. So can you help me in any way feel better about, since that's one of the things you asked for in discovery is you wanted access to her job performance reviews. Do you see the problem? The problem isn't giving you hers. The problem is if I say, yes, you're entitled to those, am I saying every single employee who didn't get a job he thought he was entitled to is now entitled to see the personal confidential employment records of all of his competitors? That's the problem I'm having. Perhaps the performance records was a bit of an overreach on my part. What I really wanted was the job descriptions. And I wasn't looking for any personal information of the selected individual. In how we do our performance evaluations, there's certain information that indicates the jobs are performing. And that's all I was looking for. Okay. Her experience. Her experience. Okay, I understand. I'll restore some of your rebuttal time. Let's hear from the government. May it please the court. Mr. Bazin's veterans' preference rights were not violated by his non-selection for the position of principal assistant deputy counsel because the Army followed the law and its own regulations in selecting the most qualified individual for the position. Do you think that the selection official understood what it meant to have veterans' preference rights and to follow those procedures versus what it simply means to serve in a military capacity? Because I think you probably understand well that those are two very different things. Not every person who has passed military service is entitled to veterans' preferences, correct? Yes, Your Honor, that is correct. And do you think this selecting official understood that? I do believe so. And I also believe that the selecting... Well, let's look at his testimony on page 164. Grab your appendix. Yes, Your Honor. And here's what he says at page 164 in the middle of the page. And what is it that indicates whether somebody is preference eligible? This is the question put to the selecting official. I can't say exactly what you mean by that, but obviously it's service in the United States Armed Forces, honorable discharge. And would that explain why maybe he thought Mr. Burke was also someone entitled to veterans' preferences because he viewed a veterans' preference as being an entitlement to any person who has prior military service as opposed to understanding the proper employment procedures set out by the U.S. government for assessing veterans' preferences and giving those people the appropriate entitlement? Well, later on in the page, Your Honor, Mr. Minch also discusses that the point system is explained on page 11 of the instruction and discusses if the Veterans Employment Opportunity Act were applicable, a disabled veteran would get ten preference points, Purple Heart recipients would get ten preference points, and other veterans would qualify for a five-point preference. So he clearly understands where in the regulations... But wait, wait. Let's read the next paragraph. On the very next page, he said he's actually not that familiar with the rules and that he only thought that those preference points were given if you were choosing between two veterans, not if you were choosing between a veteran and some other candidate. I think there's really two issues here, Your Honor. The first is Mr. Minch's articulation of the difference between the different veterans' preference and whether someone is entitled to a points preference or whether someone has ever served in the military but is not entitled to a points preference. Mr. Minch's point, as later on page A-165, he states that we didn't get to the point of choosing between veterans. And so at that point, had he gone to the list of certificate of eligibles, which I believe is at page A-45 through 48 and is partially redacted, it set forth whether or not each individual had a point preference. Had the Army determined that Mr. Large and Mr. Vazen were equally well qualified, then it would have had to establish who had the points preference. Mr. Large, I said Burke. Is that his name? I believe his name is Burke Large, Your Honor. I thought Burke was his last name. I remember seeing him referred to as Burke in some of the transcript, and so I'm sorry. Yes. So in terms of whether or not the Army would have to choose between two veterans, when one is preference eligible and one is not, should Mr. Large and Mr. Vazen been considered equally well qualified, then as per the regulations and as Mr. Minch stated, Mr. Vazen would have had to be chosen. But then at the bottom of page 166, he goes on to say that none of that applies in this case because this is accepted service. Accepted service for DOD civilian attorney positions, which are wholly exempt from the appointment procedures in Part 302 of Title V. And so he says that that means he doesn't have to worry about the veterans preference rules. He goes on to expressly say that. He also states in his testimony that veterans preference had to be applied as far as administratively feasible. And this is where much of the confusion lies within the testimony. Where does he say that? I don't recall seeing it. I recall seeing it, but where is it? I believe it was at A171. No, my apologies, Your Honor. That discusses the qualifications of the selectee. It was considered a positive factor. Mr. Minch discussed that at A149, A150, A154 through 157 and A161. Now, in terms of the DOD regulations, do state that this is an accepted service position and is wholly exempt from the appointment procedures in Part 302 of Title V of the Code of Federal Regulations. The issue in this case is that all the parties, the administrative judge, Mr. Minch, Mr. Bazan, everyone refers to veterans preference sort of in a blanket fashion. Mr. Bazan was entitled to have his veterans preference considered as a positive factor in making the decision. That's not all in this case, right? DOD went further, and in the case as applied to Mr. Bazan, it didn't just say he's entitled to have it as a positive factor. It went further and established a very precise, formulaic-like rule which says, and if, it's not just a positive, and if it comes down to a choice between a non-preference eligible veteran and a preference eligible veteran and they are equally well-qualified, tie goes to the veteran every time. And so this isn't just a matter of saying it's a positive factor. This has to, there is a very precise and clear DOD rule that says what I just articulated, correct? That is correct, Your Honor, but the Army did not get to that point because it did not consider Mr. Bazan to be the most well-qualified. Yes, but the board, oh, I'm sorry, please go ahead. It's not a question of most well-qualified. Or even equally well-qualified. It didn't find a tie. It did not determine that there was a tie. The board stated in footnote four on page A6 that the Army never reached the second part, which is subpart B of DODI 1442.02, which is where if two individuals are equally well-qualified, a preference eligible veteran must be given the position. That is not what happened here. Mr. Bazan was ranked third out of the three finalists interviewed for the position. Suppose he had been ranked second. How would this change? Mr. Bazan fails to point to anything in the record to indicate that the Army ever considered him equally well-qualified. See, isn't that a bit of a problem? Because the judge below denied him discovery on all of those points. The judge denied him discovery saying it's irrelevant to him what Ms. Moriarty's qualifications are because the board expressly said it did not have jurisdiction to and nor would it look at the qualifications of the two agencies and review whether they were equally qualified. Didn't the board expressly and unequivocally disavow jurisdiction to do that? The board did state that the MSPB does not have the jurisdiction to review the relative qualifications of the selectees. But if the DOD has a rule that says if two people are equally qualified, the tie goes to the veteran, how can the MSPB say we refuse to determine whether the two people were equally qualified? That doesn't make sense to me. The cases in which we've held there's no jurisdiction, the cases in which the MSP has held there's no jurisdiction, all go to cases where this particular directive doesn't exist. It just says positive factor. They check the box that says positive factor and that ends the entire inquiry. Those are the only cases in which there's been a conclusion that there's no jurisdiction of the board to review the qualifications. But here, this agency chose for better or worse to enact a very specific qualification-based directive with regard to veterans. Why doesn't that imbue the MSPB with the jurisdiction to actually review the qualifications to ensure that directive has been followed? I know that was a very long question and if you want me to clarify any of it, I can. If you could please reiterate your point just to make sure I address only what you're looking for. Why doesn't the MSPB have jurisdiction to review the qualifications in light of the DOD directive, which is very clear and says veterans, if all things are tied, veterans have to be chosen. So why doesn't the MSPB have jurisdiction to decide whether all things were in fact tied or not? Well, as this court discussed in Schoenrogi versus Department of Justice, that the MSPB does lack jurisdiction. But that was a case in which there wasn't a directive like this one. That's what I'm trying to suggest to you is every single case before this involved a different agency that just said, you consider a veteran's preference to be a positive factor and they say nothing else. They have no specific mandate like this agency does. So why doesn't the directive at issue in this case imbue the board with jurisdiction to assess whether that directive was complied with? Your Honor, that would require statutory changes for the MSPB to have. I see nothing in the statute that discusses or prevents the MSPB from looking at the qualifications of the two candidates to ensure that this directive was followed. What in the statute prevents the MSPB, what statutory changes are you telling me would be required? As relates to this case in particular, and I do hope that this will answer the question for you, Mr. Bazan brings the question in the context of a prohibited personnel practices claim, which is specifically required to go to the Office of Special Counsel by 5 U.S.C. 1214a. That's one, that's one, the prohibited personnel practice. But the second is he's third of three. Correct. And in this factual posture, I have a problem with that. You have a problem with him being ranked third? I have a problem with the MSPB having jurisdiction to make the determination. If he was second of two and there was something in the record that indicated it was a tie, then I'd say they, under the rule, indeed they do have jurisdiction. And I don't wish to speak for every possible case that could be out there. With this particular case, yes, he was ranked third. There's nothing in the record to indicate that Mr. Bazan was equally well qualified. But isn't that because you denied him discovery? No, Your Honor, that is not. Because as you pointed out before, some of what Mr. Bazan was looking for was, for instance, Ms. Moriarty's performance evaluations. What he was trying to prove was that the position description was manipulated to give her a better chance of receiving the position than him. That is a prohibited personnel practice. But even if we can't review that, I mean, you know, having presided over a lot of personnel cases over the years, when, for instance, someone says that they were denied a promotion because of their age, then the only way to make that determination is to look at the respective qualifications of the persons to see if, but for the age, this person would have likely gotten the position. How can you make that determination that, but for not giving him his veteran's preference, he would have gotten the position? Well, the evidence on the record demonstrates that experience in environmental law and the civil works program were the most important qualifications for the position. The agreed upon material facts of the parties state that 43 of the 40- And if they manipulated that, it's a prohibited personnel practice. Correct, Your Honor. And the decision memorandum at pages 836 through 38 sets forth the relative qualifications. Ms. Moriarty's qualifications are set forth specifically in a three-page professional qualifications memorandum at A42 through 44, where it details the specific reasons why she was considered qualified for the position that they were hiring for. And there's also various testimony by Mr. Minch at pages A150, 151, 154, 158, 168, 171, and 172, in which he discusses that environmental law and experience in the civil works program are the most important factors. When looking at the professional qualifications, I'm sorry, when looking at the decision memorandum at pages 836 through 38, it discusses that Ms. Moriarty was unanimously selected because of her expertise in civil works and environmental law. Mr. Large's discussion at page 838 discusses how he lacks that same experience, and that is why he was not chosen for the position. So there's evidence in the record that he was never considered as well qualified. And in addition, as you pointed out, Judge Wallach, he was number three. Number two, Mr. Large, who testified on behalf of Mr. Bazan at the hearing, also testified that he'd been in his position at the Corps since 1988. So he had over 25 years of experience in this particular position. But he did actually differentiate between himself and Mr. Bazan and basically say, I just don't have the qualifications that he has. Didn't he pretty much say that? I don't know that he said that, Your Honor. I do know that he mentioned that Ms. Moriarty was an environmental lawyer, and Mr. Bazan discusses in his brief repeatedly that the selecting Ms. Moriarty had only seven years of experience at the time she was hired, while he had over 19. We're going on years of service, so to speak. Mr. Large had 25 years. But Mr. Large was not eligible for a veteran's preference, isn't that right? Despite the fact that the deciding official thought he was, just because he happened to have been a veteran. He was a veteran because of the redactions, and it was never discussed by the administrative judge whether or not he was entitled to veteran's preference. Again, it didn't get to that point because Ms. Moriarty was considered the best qualified. A few other things I'd like to point out, Your Honors. The administrative judge and the board made factual findings that Mr. Bazan's veteran's preference was considered as a positive factor. That's at pages A4 through 5 and A19 through 20. And for those reasons, the board's decision should be affirmed. Okay. Mr. Bazan, we'll give you two minutes of rebuttal time. Thank you, Your Honor. There was a lot of talk about the factors. If the board were to go to A036, it sets out the seven factors for the position. They went to the approving official. This was the approval qualifications memorandum. There was no emphasis in the outgoing deputy of any kind with regards to the civil works. Yeah, but isn't that a prohibited personnel practice? I mean, even if we at our guts think that this was manipulated to give it to her, can we or the MSPB do anything about that piece of it? Yes, Your Honor. They denied it because they said that I was setting out a claim under the PPP. But that's not what I was doing. I was bringing a VEOA claim, and there were... I don't believe you can divorce positive factor from someone violating their duties under the PPP. And I think that the board, as an evidentiary matter, can look at violations of the PPP to determine if there's a positive factor. I don't believe that you can have someone have a positive factor if the PPP is being violated by the selecting official. Supposing the environmental experience is important. What I see from the record is you had the JAG environmental law course. What else was there in your background that involved environmental law? Well, first, the position did. But in my background, I have had several classes. Part of my job in various times was the representation of commands. I was a command judge advocate four times. And in my duties as a command judge advocate, environmental issues with a facility that's owned by... The Army spills stuff all the time. Yes, Your Honor. We do. And that's why I went to the environmental course. I also went to the Navy's environmental course as well. So I do have a background in environmental law. Okay, Mr. Bassad, I think that we need to be over this particular case. We've gone well over our time. So I thank both counsel for their argument. The case is taken under submission.